UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOY EBERLINE, CINDY
ZIMMERMAN, and TRACY
POXSON, individually and on behalf
of all others similarly situated,

            Plaintiffs,

v.

DOUGLAS J. HOLDINGS, INC.,
DOUGLAS J. AIC, INC.,
DOUGLAS J. INSTITUTE, INC.
DOUGLAS J. EXCHANGES, INC.,
SCOTT A. WEAVER and
TJ WEAVER,

            Defendants.

_____/

Case No. 5:14-cv-10887

Hon. Judith E. Levy
Magistrate  Michael J. Hluchaniuk

**DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT
AND APPLICATION OF THE SIXTH CIRCUIT'S DECISION**

As directed in the Court's April 2, 2021 Text-Only Order, and its July 7, 2021

Opinion and Order (ECF No. 128), Defendants Douglas J. Holdings, Inc.; Douglas

J. AIC, Inc.; Douglas J. Institute, Inc.; Douglas J. Exchange, Inc.; Scott A. Weaver;

and TJ Weaver; file this renewed motion for summary judgment on all of Plaintiffs'

claims in the above-captioned matter, pursuant to Federal Rule of Civil Procedure

56.

1.     Defendants seek summary judgment through the application of the factors included in the Sixth Circuit's December 17, 2020 Opinion and Order, remanding this matter to the Court for proceedings consistent with that Opinion and Order. *See Eberline v. Douglas J. Holdings, Inc.*, 982 F.3d 1006 (6th Cir. 2020).

2.     Under those factors, Plaintiffs are not Douglas J's "employees" as that term is defined in the Fair Labor Standards Act, 28 U.S.C. § 203. And as a result, Plaintiffs' FLSA and similar state-law claims all fail. *See id.* at 1012; *Allen v. MGM Grand Detroit, LLC*, 675 N.W.2d 907, 909 (Mich. Ct. App. 2003) (observing that the "MWL parallels the FLSA," with the only difference being the statutes of limitation); *Callahan v. Chicago*, 78 F. Supp. 3d 791, 821 (N.D. Ill. 2015), *aff'd sub nom. Callahan v. City of Chicago, Illinois*, 813 F.3d 658 (7th Cir. 2016) ("Because the IMWL parallels the FLSA so closely, courts have generally interpreted their provisions to be coextensive, and so have generally applied the same analysis to both.").

3.     Additionally, even if the Court only grants Douglas J summary judgment on Plaintiffs' FLSA claims, it should still dismiss the state-law claims for lack of jurisdiction. *See Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 210 (6th Cir. 2004) ("Generally, 'if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.'" (quoting *Taylor v. First of Am. Bank–Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992))).

4.     As the Court is aware, Defendants disagree with the Sixth Circuit's analysis. Defendants retain and preserve all their arguments that the Sixth Circuit's approach is incompatible with the Supreme Court's decision in *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947), the Sixth Circuit's own precedent in *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518 (6th Cir. 2011), and other jurisprudence interpreting the FLSA. But Defendants will not reiterate those arguments here.

5.     Defendants also reserve their right to support their motion for summary judgment with additional evidence—including an affidavit or declaration from Defendant Scott Weaver—pending the outcome of Defendants' motion for clarification (ECF No. 129) that is still pending at the time by which Defendants were ordered to file this motion. The Court would benefit from consideration of all relevant evidence. Defendants intended to present the Court with this evidence, including a declaration from Weaver and other admissible evidence from witnesses of which Plaintiffs had notice, but the Court struck some of this evidence (ECF No. 128) and has yet to rule on Defendants' motion for clarification.

6.     Defendants further contend that the declarations stricken by this Court were properly submitted because a duty to supplement only arises where the information is not otherwise known to the opposing party. Fed. R. Civ. P. 26(e)(1)(A).  Here, Plaintiffs were aware of the identity of the specific witnesses and

3

the scope of their knowledge. Accordingly, Defendants continue to believe that the declarations that were stricken should be considered by the Court in deciding the motion for summary judgment.

7.     In accordance with LR 7.1, Defendant requested, but did not obtain, concurrence in the relief sought.

Defendants' motion is fully supported by the accompanying brief in support.

                                   Respectfully submitted,

Dated:  July 23, 2021              WARNER NORCROSS + JUDD LLP

                                   s/ Matthew T. Nelson

Michael G. Brady                   Matthew T. Nelson
Adam T. Ratliff                    Amanda M. Fielder
2715 Woodward Avenue, Suite 300    Brandon J. Cory
Detroit, Michigan 48201            150 Ottawa Avenue NW, Suite 1500
313.546.6000                       Grand Rapids, Michigan 49503
mbrady@wnj.com                     616.752.2000
aratliff@wnj.com                   mnelson@wnj.com
                                   afielder @wnj.com
                                   bcory@wnj.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

—————————————

JOY EBERLINE, CINDY
ZIMMERMAN, and TRACY
POXSON, individually and on behalf
of all others similarly situated,

            Plaintiffs,

v

DOUGLAS J. HOLDINGS, INC.,
DOUGLAS J. AIC, INC.,
DOUGLAS J. INSTITUTE, INC.
DOUGLAS J. EXCHANGES, INC.,
SCOTT A. WEAVER, and
TJ WEAVER,

            Defendants.

————————————————/

Case No. 5:14-cv-10887

Hon. Judith E. Levy

Magistrate Michael J. Hluchaniuk

**DEFENDANTS' BRIEF IN SUPPORT OF
RENEWED MOTION FOR SUMMARY JUDGMENT AND
APPLICATION OF THE SIXTH CIRCUIT'S DECISION**

**ORAL ARGUMENT REQUESTED**

## ISSUES PRESENTED

I.      Whether this Court should dismiss Plaintiffs' claims under the Fair
        Labor Standards Act (FLSA) because the FLSA only applies to
        employees, one cannot be an employee without an expectation of
        compensation, and Plaintiffs concede that they never expected to be
        compensated for any of their time while attending Douglas J's
        cosmetology schools.

        **Defendants' Answer:     Yes.**

II.     Whether each Plaintiff was the primary beneficiary of her relationship
        with Douglas J.

        **Defendants' Answer:     Yes.**

III.    Whether the time spent on the tasks that Plaintiffs challenge was *de
        minimis* or so difficult to track that no compensation is owed under the
        FLSA and similar state statutes.

        **Defendants' Answer:     Yes.**

## MOST CONTROLLING AUTHORITY

*Acosta v. Cathedral Buffet, Inc.*, 887 F.3d 761 (6th Cir. 2018) (holding that for the purposes of the FLSA, whether plaintiffs expected compensation is a "threshold issue" to be decided before applying any other test to assess the economic reality of the relationship)

*Eberline v. Douglas J. Holdings, Inc.*, 982 F.3d 1006 (6th Cir. 2020) (setting forth the legal standard for determining whether students are employees under the FLSA)

*Solis v. Laurelbrook Sanitarium & School, Inc.*, 642 F.3d 518 (6th Cir. 2011) (holding that whether an employment relationship exists in the context of a training or learning situation depends on which party derives the primary benefit from the relationship)

*Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290 (1985) ("[T]he Act reaches only . . . those who engage in [commercial] activities in expectation of compensation.")

*Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947) (FLSA only applies to "every person *whose employment contemplated compensation*," and not individuals "who, without promise or expectation of compensation," worked for the benefit of others) (emphasis added)

# TABLE OF CONTENTS

Page

ISSUES PRESENTED.................................................................... i

MOST CONTROLLING AUTHORITY................................................ ii

TABLE OF AUTHORITIES ..................................................................v

INTRODUCTION ....................................................................................1

    Douglas J's student clinics prepare students for real work experiences .........3

    Douglas J employs individuals to assist with the clinic's operations ............4

    Douglas J student clinic experience...............................................6

    Plaintiffs' experiences at Douglas J................................................8

    Plaintiffs keep contemporaneous records of their clinic time ......................10

PROCEDURAL HISTORY.....................................................................11

ARGUMENT .......................................................................................14

    I.    Plaintiffs' claims fail because they had no expectation of compensation.....................................................................15

    II.    Plaintiffs were the primary beneficiaries of their time in the student clinic........................................................................17

    III.    Plaintiffs benefited from even the allegedly "mundane" tasks...........20

        A.    Plaintiffs derived "tangible and intangible" "educational value" from the selected tasks because, consistent with its mission, Douglas J's student clinic emulates a true salon experience ................................................................21

        B.    Plaintiffs received academic credit for all their clinic time......24

        C.    Plaintiffs' activities were voluntary..........................................26

        D.    Plaintiffs did not displace Douglas J's employees, who are hired to clean, do laundry, and restock shelves ..................28

iii

Page

    IV.   Plaintiffs' time spent on these tasks was de minimis and
           impracticable to record .........................................................................31

CONCLUSION .......................................................................................................32

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Acosta v. Cathedral Buffet, Inc.*,
887 F.3d 761 (6th Cir. 2018) .................................................................16

*Benjamin v. B & H Education, Inc.*,
877 F.3d 1139 (9th Cir. 2017) ..............................................................16

*Chambers v. Sears Roebuck & Co.*,
428 F. App'x 400 (5th Cir. 2011) .................................................. 31, 32

*Eberline v. Douglas J. Holdings, Inc.*,
982 F.3d 1006 (6th Cir. 2020) ...................................................... passim

*Galey v. May Department Stores Co.*,
9 F. App'x 295 (6th Cir. 2001) .............................................................28

*Guy v. Casal Institute of Nevada, LLC*,
2019 WL 2192112 (D. Nev. May 21, 2019) ........................................18

*Hollins v. Regency Corp.*,
867 F.3d 830 (7th Cir. 2017) ................................................................17

*Lindow v. United States*,
738 F.2d 1057 (9th Cir. 1984) ...................................................... 31, 32

*Solis v. Laurelbrook Sanitarium & School, Inc.*,
642 F.3d 518 (6th Cir. 2011) ................................................................16

*Tony & Susan Alamo Foundation v. Secretary of Labor*,
471 U.S. 290 (1985) ...................................................................... 15, 16

*Walling v. Portland Terminal Co.*,
330 U.S. 148 (1947) .............................................................................15

## Statutes

29 U.S.C. § 206..........................................................................................15

Michigan Compiled Laws § 339.1201...............................................................2

Michigan Compiled Laws § 339.1207.............................................................24

Michigan Compiled Laws § 339.1218...............................................................2

Michigan Compiled Laws § 339.601...............................................................2

# INTRODUCTION

The Sixth Circuit remanded for this Court to determine who is the primary beneficiary of the segment of work at issue. The Plaintiffs boasted to the Supreme Court that it is a "near certainty" that this Court "will again grant partial summary judgment" in their favor. (Pls.' Br. in Opp. 3.) Defendants disagree.

First, under binding Sixth Circuit precedent, the FLSA does not apply if Plaintiffs had no expectation of compensation. Here, they did not, as Plaintiffs all unequivocally testified that they did not expect to be paid for *any* time in the clinic.

Second, the "segment of work at issue" here is all the time that Plaintiffs spent in the Douglas J student clinics. That is what Plaintiffs challenge in their Complaint and the scope of the "work" that Plaintiffs challenged in opposition to Defendants' summary-judgment motion. Because the time Plaintiffs spent in the student clinics allowed them to practice their trade, learn how a salon operates, fulfill state requirements, pass their cosmetology exams, and work as cosmetologists, Plaintiffs were the primary beneficiaries of their clinic time.

Third, even if the "segment of work at issue" is cleaning, folding towels, and restocking shelves, each Plaintiff benefitted by engaging in these tasks in the context of learning about real-world salon life. And without this time, they would not have graduated or been able to sit for the cosmetology exam. Moreover, the tasks were voluntary and did not displace any Douglas J employees. And Plaintiffs' estimations

that they spent a significant amount of time doing these tasks are contradicted by their own contemporaneous records. Plaintiffs see the problem, so they say that they lied on those records, but that does not create a genuine factual issue. Nor can Plaintiffs demonstrate that Douglas J was the primary beneficiary of these tasks, because Douglas J derived no real benefit from each Plaintiff's time spent doing mundane tasks. Plaintiffs were not employees and their claims should be dismissed.

## FACTUAL BACKGROUND

Cosmetology schools are heavily regulated. *See, e.g.*, Mich. Comp. Laws §§ 339.601, 339.1201, *et seq.* Bi-annually, Michigan inspects each cosmetology school to ensure compliance with state law, including curriculum requirements, the content of the instruction, and the clinic. Mich. Comp. Laws § 339.1218(1). (*See also* Weaver Dep. 276, 280-81, 284, PageID.2589-91; Cosmetology/Electrology School Inspection Reports, PageID.1677-1741.) State inspectors have never raised concerns regarding Douglas J's curriculum or its application. (Weaver Dep. 285, PageID.2591; *see also* Cosmetology/Electrology School Inspection Reports, PageID.1677-1741.) Indeed, based on this Court's initial summary-judgment ruling, Michigan's Attorney General, representing state regulators, initiated administrative actions against Defendants. (*See*, *e.g.*, Exhibit 1, 2019 Regulatory Complaint.) After a thorough investigation, including the review of hundreds of documents and Plaintiffs' own testimony, the state dismissed the complaints because no violation

occurred. (*See*, *e.g.*, Exhibit 2, 2020 Regulatory Complaint Dismissal.)

**Douglas J's student clinics prepare students for real work experiences**

Douglas J seeks to "provide 'education beyond expectation' by preparing its graduates for careers in cosmetology arts and sciences." (Douglas J Catalog, PageID.310.) Douglas J's instruction focuses on teaching fundamentals and "professional business building skills that are necessary for a well-rounded education and preparation for entry-level careers in the salon/spa industry." (Douglas J Catalog, PageID.313.)

To that end, Douglas J's clinic salons emulate a true salon setting. (*Id.* at PageID.312; Zimmerman Dep. 110, PageID.2488; Poxson Dep. 75-76, PageID.2398.) Just like real salons, the student clinics include a retail lobby, guest services, individual cosmetologist stations, shampoo bowls, and a laundry room. (*See, e.g.*, Weaver Dep. 82-83, PageID.2166; Zimmerman Dep. 122-23, PageID.2491.)

Douglas J employs licensed cosmetology instructors to assist and observe the students on the clinic floor, and they grade the students' performance. (Eberline Dep. 96-97, PageID.2320-21.) Only Douglas J students provide student clinic services, but these services are provided under the supervision of instructors. (*Id.*; Poxson Dep. 121, PageID.2410; Weaver Dep. 168–69, PageID.2562.)

Each Douglas J student clinic is open to the public. (Douglas J Catalog,

PageID.312.) Opportunities to practice on a guest in the clinic depend entirely on how many patrons enter the clinic, so students are not guaranteed a specific number of daily guests. (Zimmerman Dep. 155, PageID.2499; Poxson Dep. 167-68, PageID.2421.) But the Douglas J student clinics are generally busy, and Poxson testified that she served "hundreds" of guests in the clinic. (Eberline Dep. 96, PageID.2320; Poxson Dep. 82, PageID.2400.) Night students tended to see more guests because evenings and Saturdays (when night students were present) were the clinics' busiest times. (*See, e.g.*, Poxson Dep. 100-01, PageID.2404-05 (Poxson was both a night and a day student); Weaver Dep. 160-61, PageID.2560.)

Douglas J's students graduate, pass the state cosmetology exam, and find cosmetology jobs at rates that greatly exceed the accreditor's benchmarks. (*See, e.g.*, NACCAS Team Report, PageID.1743.) This is a direct result of Douglas J's robust curriculum and instruction. (Weaver Dep. 291-94, PageID.2593.) Practical experience in the student clinic and Douglas J's emphasis on teaching the real-life salon experience does, in fact, prepare Douglas J graduates for work as cosmetologists. (Zimmerman Dep. 85, PageID.2482; Poxson Dep. 26, 34-35, 70, 83, 141, PageID.2386, 2388, 2397, 2400, 2415; Eberline Dep. 71, PageID.2314.)

**Douglas J employs individuals to assist with the clinic's operations**

In addition to the licensed instructors, discussed above, Douglas J employs others to operate the clinics for the students' benefit. For instance, Douglas J

employs aesthetics/maintenance personnel. (Weaver Dep. 184-88, PageID.2566-67.) These employees ensure the student clinics and education facilities are kept clean and materials including towels and products are always available. (*Id.* at 185-86, PageID.2566.) This includes laundry, sweeping, dusting, dishwashing, and other general cleaning. (*Id.* at 68, 185-86, PageID.2162, 2566.)

Douglas J also employs guest-services personnel to assist clients and students. (Poxson Dep. 97-98, PageID.2404; Weaver Dep. 66-67, 82-83, PageID.2162, 2166; Guest Servs. Manual, PageID.2738-41.) These individuals are tasked with scheduling, sales, stocking shelves, and other guest services. (Guest Servs. Manual, PageID.2738-41; *see also* Weaver Dep. 82-83, PageID.2166.) During the relevant timeframe, Douglas J employed a substantial number of guest services and aesthetics/maintenance personnel at each location. Scott Weaver estimated that, in 2014, Douglas J employed the equivalent of 15 full-time employees at each school to sweep, wipe shelves, launder, and restock shelves. (Weaver Dep. 175-78, PageID.2564.) And Douglas J's financial records reflect that each location employed similar numbers of these personnel in the years 2011, 2012, and 2013. (Bernhardt Decl., PageID.3407, 3409.)

Douglas J also contracts with an outside janitorial service to clean each school six days a week. (Weaver Dep. 111, 182-83, 197-98, PageID.2173, 2565-66, 2569.) Again, these services are based on the needs of the facility—not the number of

students. (*See* Daenzer Cleaning Contracts, PageID.2755-59 (obligating Daenzer to keep the school facilities clean in exchange for a set weekly fee, regardless of student enrollment); *see also* Daenzer Cleaning Checklist, PageID.2762.) The janitorial service's schedules and cost are not affected by a student performing a "cleaning" task in the student clinic. (*See id*.)

**Douglas J student clinic experience**

As discussed above, the student clinic and hands-on education is a vital part of the curriculum. In the clinic, students must track their activities to demonstrate completion of the state-mandated numbers and hours performing various applications, like general hair cutting, hair straightening, and sanitation. (Zimmerman Dep. 129-30, 156-60, PageID.2493, 2499-500; Poxson Dep. 32-33, 106, PageID.2387-88, 2406; Eberline Dep. 133, PageID.2330.) Each student is responsible to record their own individual hours and practical applications towards meeting state requirements on a Minimum Practical Application sheet, or MPA. (*Id*.) Students understood that the hours and numbers of applications that they recorded would be reported to the state cosmetology board to demonstrate that students are eligible to sit for the cosmetology exam. (*See, e.g.,* Academic Catalog, PageID.3505 ("Students must turn their MPA into Administration by the first of the subsequent month. Administration will then compile the MPA's into a report and submit their findings to the State Board of Cosmetology.").)

6

Douglas J consistently emphasized the importance of accurately and truthfully completing the MPAs—indeed, Douglas J developed an MPA Worksheet Policy, which expressly provides that "[s]tudents are responsible for ensuring the accuracy of their MPA tracking." (*Id.* at PageID.3505-07 ("Failure to comply with [Douglas J's MPA policy] is a violation of the Standards of Student Conduct Policy" and "may result in . . . withdrawal."); Cosmetology Unit Outlines, PageID.2676 (curriculum included lesson on filling out MPAs).) Moreover, Michigan's regulators would "talk to students on how they maintain [their MPAs] and how those are maintained," and "interview a number of students just to check to make sure that we're actually doing what we say we're doing." (Weaver Dep. 280, 289-90, PageID.2590, 2592.) No regulator or accreditor has ever found Douglas J to be out of compliance in this regard. (*Id.*; *see also* Exhibit 2, 2020 Regulatory Complaint Dismissal (example of orders dismissing complaints).) Nor is there any evidence to suggest that any student ever indicated that they were falsifying their MPAs. (*See, e.g.*, Cosmetology/Electrology School Inspection Reports, PageID.1677-1741; NACCAS Team Report, PageID.1743; Exs. 1, 2.)

When there were no guests, Plaintiffs and other students taking the same programs had myriad options to practice their skills, including working on mannequins or peers. (Weaver Dep. 206, 209-10, PageID.2571-72; Eberline Dep. 69-70, PageID.2314; Poxon Dep. 155, PageID.2418; Zimmerman Dep. 85-86, 116,

PageID.2482, 2489.) Because students had to fulfill the hours and applications to meet state requirements, students were responsible for selecting tasks. (Weaver Dep. 206-07, PageID.2571-72.) Instructors encouraged students to use free time to work on mannequins, observe an instructor demonstration, or complete other tasks that were required for graduation. (Weaver Dep. 206-10, PageID.2571-72; Eberline Dep. 69-70, PageID.2314.)

At times, students would also clean their station, clean their tools, clean used shampoo bowls, and help instructors fold towels. (Weaver Dep. 208-211, PageID.2572-73; Zimmerman Dep. 128, 132, PageID.2492-93.) Students were not required to clean, restock shelves, or do laundry. (Weaver Dep. 209-11, PageID.2572-73 (assisting guest services staff with their responsibilities was "not an assigned responsibility of the student"); *see also id.* at 206-07, PageID.2571-72 ("[W]e give them whatever options" to "practic[e] some form of what's required by the State of Michigan.").) If a student helped with these tasks, it was voluntary. (*Id.* at 209-11, PageID.2572-73.)

**Plaintiffs' experiences at Douglas J**

Plaintiffs acknowledge several key aspects of their Douglas J education. Plaintiffs admit that they had no expectation of compensation—even tips—for their time at Douglas J. (Eberline Dep. 51, 61-63, PageID.2309, 2312; Poxson Dep. 49-

8

56, PageID.2392-93; Zimmerman Dep. 88, PageID.2482.) Plaintiffs knew Douglas J would not pay them; instead, they paid for classroom and clinic instruction. (*Id.*)

Plaintiffs admit the value of their education. They admit their Douglas J education prepared them to pass the cosmetology examination. (Eberline Dep. 51, PageID.2309; Poxson Dep. 26-28, PageID.2386 ("you're being prepared for your state test from the time that you start school"); Zimmerman Dep. 51, PageID.2473 ("the skills that were provided, what you needed to do when you took the state boards, Douglas J provided that in every session . . . .").) Each Plaintiff graduated from Douglas J and passed the state exam on the first try. (Eberline Dep. 24, 134, PageID.2302, 2330; Poxson Dep. 26, 134, PageID.2386, 2413; Zimmerman Dep. 51-52, PageID.2473.) Indeed, Zimmerman so valued her Douglas J education that she wrote a recommendation letter for her step-daughter to attend the program *after filing this lawsuit*. (Zimmerman Dep. 56-57, PageID.2474-75; Exhibit 3, Zimmerman letter.)

Plaintiffs also concede that they specifically benefited from the skills learned in the clinic. Plaintiffs acknowledge that in the clinics, they gained skill in the actual practice and execution of providing cosmetology services to guests. (Poxson Dep. 70, PageID.2397; Zimmerman Dep. 144-45, PageID.2496-97; Eberline Dep. 71, PageID.2314.) And Plaintiffs recognize that improving their skills in the clinic

9

would result in higher career earnings. (Poxson Dep. 35, PageID.2388; Eberline Dep. 71, PageID.2314.)

**Plaintiffs keep contemporaneous records of their clinic time**

Like all Douglas J students, Plaintiffs tracked their hours and tasks on MPAs. (Zimmerman Dep. 160, PageID.2500; Poxson Dep. 106, PageID.2406; Exhibits 4-6, Pls.' final MPAs, Bates Nos. DJ000142, 337, 434.) Plaintiffs were busy providing services to clients on most days in the clinic. (*See* Poxson Dep. 171, PageID.2422; *see also* Eberline Dep. 95-96, PageID.2320; Exhibits 4-6, Pls.' Final MPAs.) Poxson admitted that she provided services to hundreds of clients while at Douglas J. (Poxson Dep. 82, PageID.2400.)

Plaintiffs' MPAs further show that each Plaintiff completed the required practical applications to take the state licensing examination, including the minimum 40 hours practicing sanitation skills. (Exs. 4-6; Poxson Dep. 89, PageID.2402.) Plaintiffs' MPAs do not show that they spent 10%, much less 30%, of their time performing cleaning activities. (*See id.*)

Plaintiffs recorded their downtime hours on their MPAs. (*See id.*) They had several options to fill any downtime with practical experience needed to complete their 1,500 hours of state-mandated education. (Eberline Dep. 69-71, PageID.2314; Poxson Dep. 154-55, PageID.2418; Zimmerman Dep. 85-86, PageID.2482.) Among those options were practicing skills on mannequins, practicing on fellow classmates,

cleaning tasks, or working on bookwork. (*Id.*) Plaintiffs confirmed that students "regularly" opted to work on fellow classmates and practice the various skills they were learning, including coloring, waxing, and cutting. (Eberline Dep. 69-71, PageID.2314; Zimmerman Dep. 85-86, PageID.2482.) Eberline recognized that the options available to her during her time in the student clinic—working on the public, classmates, or mannequins—were beneficial. (Eberline Dep. 71, PageID.2314.) Plaintiffs' MPAs contradict Plaintiffs' guesstimates of the time they spent on cleaning tasks. (Exs. 4-6; Poxson Dep. 89, PageID.2402)

## PROCEDURAL HISTORY

Plaintiffs sued Douglas J alleging violations of the FLSA, Michigan's minimum wage law, and Illinois' minimum wage law. Plaintiffs identified the alleged "work" they are challenging as "each hour that they labored in Defendants' personal services business." (Compl. ¶¶ 71, 79, 86, PageID.17, 18, 20.) In opposition to Defendants' earlier summary-judgment motion, Plaintiffs reasserted that they were employees for all the time that they "labored" in the clinics. (*See, e.g.*, Pls.' Summ. J. Resp., PageID.2892-95.)

On cross motions for summary judgment, the Court granted partial summary judgment to both sides. The Court extracted the time that Plaintiffs estimated that they spent cleaning, doing laundry, and stocking shelves from the parties' educational relationship and did not apply the primary-beneficiary test to those activities.

(Op., PageID.3565-71.) The Court concluded that Plaintiffs were employees when performing those particular activities. (*Id.* at PageID.3575.) After applying the primary-beneficiary test to what remained of the parties' relationship, the Court held the Plaintiffs were not employees as to the rest of Plaintiffs' time at Douglas J. (*Id.*) Plaintiffs moved for reconsideration of this part of the Court's decision, arguing that they were employees not just for these tasks, but for all time they spent in Douglas J's student clinics. (Pls.' Mot. for Recon., PageID.3579-80.)

On appeal, the Sixth Circuit reaffirmed that the "proper approach for determining whether an employment relationship exists in the context of a training or learning situation is to ascertain which party derives the primary benefit from the relationship." *Eberline v. Douglas J. Holdings, Inc.*, 982 F.3d 1006, 1013 (6th Cir. 2020). The court reasoned that the primary-beneficiary test should be applied to cleaning, laundry, and stocking shelves because those tasks arose within the parties' educational relationship. *Id.* at 1013-14.

The Sixth Circuit then adopted a "targeted" approach to the primary-beneficiary analysis, and remanded for the Court to apply this test to the segment of work at issue. *Id.* at 1014-19. The Sixth Circuit's targeted approach requires identification of the segment of work for which Plaintiffs seek compensation. *Id.* at 1016-17. The Sixth Circuit did not analyze how to determine what segment of work is at issue, but assumed that the segment here is composed of the tasks identified in

12

Plaintiffs' partial motion for summary judgment. *Id.* at 1018-19.

Once the segment of work is identified, the Sixth Circuit's approach applies the primary-beneficiary test to that segment, not the relationship as a whole. *Id.* at 1017-18. Nonetheless, this analysis cannot take a task "out of its context." *Id.* at 1017. So where "the segment of work at issue provides benefits as a result of its place in the educational relationship, [the court should] consider those benefits." *Id.* Those benefits include, at a minimum, whether students received academic credit and the relationship between the activities and the school's curriculum. *Id.*

To decide if Plaintiffs are the primary beneficiaries of the segment of work at issue, this Court must address certain specific factors "like whether the purported employee had an expectation of compensation, derives educational value from the work, or displaces paid employees." *Id.* Other considerations that might "shed light" on who primarily benefitted from the work at issue include the mandatory or voluntary nature of the tasks, the relationship of the work to the school curriculum and stated mission, the type of work performed in the corresponding real-world commercial setting, and the academic credit received by Plaintiffs for the work. *Id.*

Finally, if the Court determines that the Defendants are the primary beneficiaries of the segmented work, the Sixth Circuit directed that the court should decide whether the activities are "undertaken for *de minimis* amounts of time or are too difficult in practice to record" to be appropriately compensated. *Id.* at 1018.

13

## ARGUMENT

Based on the test laid out by the Sixth Circuit and binding precedent, there is no genuine issue of material fact that Plaintiffs are not employees under the FLSA and are not entitled to compensation. First, under binding Sixth Circuit precedent, the FLSA does not apply if a plaintiff had no expectation of compensation. Plaintiffs admit that they had no expectation of payment for *any* time spent in the student clinic. Plaintiffs' complaint should be dismissed for this reason alone.

Second, if the Court moves past the threshold inquiry to apply the primary-beneficiary test, Plaintiffs were the primary beneficiaries of the segment of the work at issue. Plaintiffs have consistently sought compensation for *all* the time they "labored in Defendants' personal services business," *i.e.* the student clinics. Thus, this is the segment of work at issue. And Plaintiffs admit that they received value from this time, including benefitting from the practical experience and having been adequately prepared to pass the state licensing examination. Plaintiffs were the primary beneficiaries of their time in the student clinics.

Third, even if the clinic context were ignored and the segment of work was limited to cleaning, folding towels, and stocking shelves, Plaintiffs are *still* the primary beneficiaries. Plaintiffs engaged in these tasks in the context of learning about real-world salon life. By their own admission, Plaintiffs received academic credit for these hours. And without them, they would not have graduated. Plaintiffs

14

engaged in these tasks voluntarily. And Douglas J derived no real benefit from these discrete tasks. There is no evidence that Plaintiffs' alleged "cleaning tasks" displaced paid employees, reduced Douglas J's payroll, or cut Douglas J's janitorial costs. Accordingly, Douglas J is entitled to summary judgment.

## I. Plaintiffs' claims fail because they had no expectation of compensation.

The FLSA's minimum-wage provisions only apply if Plaintiffs are employees. 29 U.S.C. § 206(a). Plaintiffs can only be employees if they expected compensation from Douglas J while they attended cosmetology school. They did not. Therefore, the FLSA does not apply and Plaintiffs' claims fail.

The FLSA applies to "every person *whose employment contemplated compensation*," but not to individuals "who, without promise or expectation of compensation," work for their own advantage on the premises of another. *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947) (emphasis added). From this, the Supreme Court concluded that if the trainees in *Portland Terminal* had been enrolled in a "vocational school, wholly disassociated from the railroad, it could not reasonably be suggested that they were employees of the school." *Id.* at 152-53.

The Supreme Court has since reiterated the dispositive importance of an expectation of compensation to the existence of an FLSA employment relationship. In *Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290 (1985), the *only factor* the Court considered to decide if the plaintiffs were employees was

15

whether they expected compensation. *Id.* at 299-302. The Court concluded that because the plaintiffs "must have expected to receive in-kind benefits" for their services, there was an "implied" expectation of compensation. *Id.* at 302. Without an expectation of compensation, the FLSA would not have applied. *See id.*

The Sixth Circuit too has recognized that whether FLSA plaintiffs expected to be paid speaks definitively to the "economic realities" of the relationship, which is ultimately what the primary beneficiary test is evaluating. *See Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518, 522-23, 525-26 (6th Cir. 2011) (the purpose of the primary-beneficiary test is to assess the economic reality of the vocational-training relationship). The absence of an expectation of compensation means that the person is not an employee. *Acosta v. Cathedral Buffet, Inc.*, 887 F.3d 761, 766 (6th Cir. 2018).[1] In *Acosta v. Cathedral Buffet*, the Sixth Circuit explained that the question of whether an FLSA plaintiff expected to receive compensation is a "*threshold inquiry that must be satisfied*" before a court can apply any multi-factor analysis to "assess the economic realities of the working relationship." *Id.* at 766 (emphasis added). "*Portland Terminal* and *Alamo* plainly require courts to first ask whether plaintiffs worked in 'expectation of compensation.'" *Id.* at 767 (cleaned up).[2]

---

[1] *Cathedral Buffet* was decided after the initial summary-judgment briefing here.

[2] Other circuits have found it bizarre that students who pay to participate in a program without any expectation of compensation would be considered employees under the FLSA. *See Benjamin v. B & H Educ., Inc.*, 877 F.3d 1139, 1147 (9th Cir. 2017) ("[T]here is no dispute that [the] students signed on knowing they would not

Here, Plaintiffs cannot get past this threshold. Plaintiffs admit and have testified that they never expected to be paid for any of their time in Douglas J's program. (Eberline Dep. 51, 61-63, PageID.2309, 2312; Zimmerman Dep. 88, PageID.2482; *see also* Poxson Dep. 49-56, PageID.2392-93.) Plaintiffs contracted with Douglas J to educate them, train them for licensure, and give them real world experience in cosmetology; not to pay them wages. (*Id.*) In the absence of an expectation of compensation, the FLSA does not apply.

## II.   Plaintiffs were the primary beneficiaries of their time in the student clinic.

The segment of work at issue here is all of Plaintiffs' time in the student clinic. The Sixth Circuit's opinion requires the court to ascertain the scope of the work at issue by identifying the work for which Plaintiffs seek compensation. *Eberline*, 982 F.3d at 1017. Plaintiffs have alleged that they are entitled to compensation for *all* of their time in the student clinic. (Compl., PageID.8-9; Pls.' Summ. J. Resp., PageID.2892-95.) *Eberline* does not authorize consideration of something less than the entirety of Plaintiffs' clinic time. *See* 982 F.3d at 1017.

This Court has already granted summary judgment to Douglas J as to all aspects of Plaintiffs' time in the clinic except the time spent cleaning, folding

---

receive remuneration and did not expect compensation."); *Hollins v. Regency Corp.*, 867 F.3d 830, 836 (7th Cir. 2017) ("[T]he fact that students pay . . . for the practical-training time is fundamentally inconsistent with the notion that . . . the students were employees.").

laundry, and restocking shelves. (Op., PageID.3575.) Summary judgment was (and is) appropriate because Plaintiffs were the primary beneficiaries of their clinical education at Douglas J. Indeed, every court in the country that has decided whether cosmetology students should be paid for time spent in the student clinic has held that the students are the primary beneficiaries of this time. (*See* Mot. to Certify Appeal, PageID.3673-77 (collecting authority).) *See also Guy v. Casal Inst. of Nev., LLC*, 2019 WL 2192112 (D. Nev. May 21, 2019).

As set forth above, the Sixth Circuit provided this Court with several factors to consider in determining whether Plaintiffs were the primary beneficiaries. *Eberline*, 982 F.3d at 1018. These factors include the "educational value, both tangible and intangible, of the tasks under scrutiny"; "the displacement of paid employees to the school's competitive benefit in the commercial marketplace"; "the relationship of the work at issue to the school curriculum, state regulations, and the school's stated mission and educational philosophy"; "the type of work performed in the corresponding real-world commercial setting"; and "the academic credit received by the plaintiffs for the work." *Id.* at 1018. These factors show that Plaintiffs were the primary beneficiaries of their student-clinic time.

1. Plaintiffs' time in the student clinic relates to their education and Douglas J's curriculum and stated mission. Douglas J's mission is to "provide 'education beyond expectation.'" (Douglas J Catalog, PageID.310.) The Douglas J

program is not just about giving students information to pass a test, but teaching the cosmetology profession. (Weaver Dep. 302-304, PageID.2595-96 (explaining how Douglas J has "a different standard of what it takes to be successful in this industry").) To achieve this core mission, Douglas J's clinic salons emulate a true salon setting, which Plaintiffs admit. (Douglas J Catalog, PageID.312; Zimmerman Dep. 110, PageID.2488; Poxson Dep. 75-76, PageID.2398.)

2.     Plaintiffs also derived an educational benefit from the practical experience in the clinic. Plaintiffs admit that the student clinic focused on improvement of skills and reinforcement of the needed knowledge to be a successful cosmetologist. (Poxson Dep. 76, PageID.2398; Eberline Dep. 51, 107, PageID.2309, 2323; Zimmerman Dep. 110, PageID.2488.) Instructors would provide feedback on the services Plaintiffs provided, and the feedback was intended to, and did, further their skills. (Poxson Dep. 82, PageID.2400; Zimmerman Dep. 38, PageID.2470.) Plaintiffs concede that they gained skill in the actual practice and execution of delivering services to customers. (Poxson Dep. 70, PageID.2397; Zimmerman Dep. 144-45, PageID.2496-97; Eberline Dep. 71, PageID.2314.)

3.     Moreover, Plaintiffs admit that their education at Douglas J prepared them to pass the state cosmetology examination. (Eberline Dep. 51, PageID.2309; Poxson Dep. 26-28, PageID.2386; Zimmerman Dep. 51, PageID.2473.) Indeed, Plaintiffs received academic credit for their time spent in the student clinic, and that

credit was necessary to sit for the cosmetology examination. (Poxson Dep. 179, PageID.2424; Eberline Dep. 113, PageID.2325.) After graduating, each Plaintiff passed the state exam on the first try. (Eberline Dep. 24, 134, PageID.2302, 2330; Poxson Dep. 26, 134, PageID.2386, 2413; Zimmerman Dep. 51-52, PageID.2473.) In sum, Plaintiffs are licensed cosmetologists because of their clinic time.

4.    Only Douglas J students provide services at the student clinic. (Poxson Dep. 120-21, PageID.2409-10.) This is not contested. Neither licensed cosmetologists nor student instructors provide cosmetology services on the clinic floor to the public guests. (Eberline Dep. 96, PageID.2320; Poxson Dep. 121, PageID.2410.) There is no evidence that Plaintiffs displaced paid employees.

Plaintiffs seek compensation for the entire time in the student clinic. But the record evidence is clear—Plaintiffs are not entitled to it because they were the primary beneficiaries of their experience in Douglas J's clinic.

## III.   Plaintiffs benefited from even the allegedly "mundane" tasks.

Despite placing the entirety of their time in the salon at issue in their Complaint, Plaintiffs have focused since summary judgment on a few tasks (while still arguing that the rest of the clinic time remains at issue). But even if this Court only assesses the tasks that Plaintiffs raised in their motion for partial summary judgment (laundry, cleaning, and restocking products), the conclusion is the same: Plaintiffs were the primary beneficiaries.

The Sixth Circuit's factors to consider in making the primary beneficiary determination are addressed below. It is important to note that the primary-beneficiary analysis does not require Douglas J to show that it derived no benefit. Rather, the question is who was the *primary* beneficiary—Plaintiffs or Douglas J.

### A. Plaintiffs derived "tangible and intangible" "educational value" from the selected tasks because, consistent with its mission, Douglas J's student clinic emulates a true salon experience.

Douglas J is not just a cosmetology school that teaches students how to cut hair. Rather, Douglas J believes that its duty is to also teach "professional business building skills that are necessary for a well-rounded education and preparation for entry-level careers in the salon/spa industry." (Douglas J Catalog, PageID.313.) Thus, Douglas J's clinic floor was created to "emulate a true salon setting." (Douglas J Catalog, PageID.312; Zimmerman Dep. 110, PageID.2488; Poxson Dep. 75-76, PageID.2398.) And it does. Just like real salons, the clinic includes a retail lobby for the public guests, guest services, individual cosmetologist stations, shampoo bowls, a laundry room, and the like. (Weaver Dep. 82-83, PageID.2166; Zimmerman Dep. 122-23, PageID.2491.)

Plaintiffs acknowledge that they learned not only the technical aspects of cosmetology, but also the importance of the guest experience to a successful career. (Poxson Dep. 84, PageID.2400 (confirming that Douglas J's curriculum encouraged students to provide "an experience, not just a service being done," and that her guest

21

services skills improved over time); *see also id.* at 137, PageID.2414 (testifying that the five objectives listed in Douglas J's catalog were "part of the educational experience [she] received" and among her areas of improvement); Douglas J Catalog, PageID.313 (listing among five objectives: "[r]espect the need to deliver excellent service for the value received," "[d]evelop . . . effective communication skill to interact with . . . guests," and "[d]evelop consultation skills to make the proper recommendations for the guests needs").) Douglas J's focus on the guest experience in a realistic setting distinguishes Douglas J from other cosmetology schools and prepared students for the future in the industry. (*See, e.g.,* Poxson Dep. 84, 137, PageID.2400, 2414; Douglas J Catalog, PageID.310; Weaver Dep. 302-04, PageID.2595-96 (explaining how Douglas J has "a different standard of what it takes to be successful in this industry" and takes pride in its successful graduates).)

Importantly, cosmetologists are required to keep their real-life salon work areas clean and sanitized. Thus, as Plaintiffs admit, they were taught sanitation as part of the Douglas J curriculum and state-licensing examination. (Eberline Dep. 104-05, PageID.2322-23; Poxson Dep. 69-70, PageID.2397; Zimmerman Dep. 60-61, 119-20, PageID.2475-76, 2490.) After each customer, students would sweep up hair, clean their respective stations, and sanitize their tools. (Eberline Dep. 119-20, PageID.2326; Poxson Dep. 162-63, PageID.2420; Zimmerman Dep. 121, PageID.2491.) Eberline even admitted that sanitation skills may not be naturally

known to all students at Douglas J, and that students need to be taught to properly perform these tasks. (Eberline Dep. 108, PageID.2323.) Plaintiffs concede that sanitation is an important part of the Douglas J curriculum, and the state examination, and thus they primarily benefited from sanitation related activities. (*See, e.g.*, Eberline Dep. 104-05, 108, 119-20, PageID.2322-23, 2326; Poxson Dep. 69-70, PageID.2397; Zimmerman Dep. 60-61, 119-20, PageID.2475-76, 2490.)

Plaintiffs admit, as they must, that "cleaning" tasks are also tasks performed in real-world salons. (Poxson Dep. 70-71, PageID.2397; Eberline Dep. 115-16, 190-92, PageID.2325, 2344). Plaintiffs agree that just like the student clinic, a real-life salon has down time. Indeed, just like the student clinic, Poxson testified that in a real salon, the number of services on a given day depends on whether the salon is "slow or busy." (Poxson Dep. 10, 15, 20, PageID.2382-84.) Employed, licensed cosmetologists do the same things during downtime that Plaintiffs did in the student clinic. Eberline agreed that in her post-education experience working in real salons, "cleaning of the entire salon, not just the stations, was a needed part of operating such a business." (Eberline Dep. 106, PageID.2323.) Eberline also testified that during her real-world work in salons, she has performed many of the same cleaning tasks that she claims she performed at Douglas J. (*Id.* at 115-16, 190-92, PageID.2325, 2344.) Poxson also agreed that she performed the same tasks for

23

which she now seeks compensation in her real-world salon experiences. (Poxson Dep. 70-71, PageID.2397.)

The same is true for laundry. Eberline testified that in her real-world salon experience after graduation, while a specific person was generally tasked with undertaking laundry, that person was often helped in doing laundry by "whoever had free time." (Eberline Dep. 151-52, PageID.2334.) Eberline testified she still does laundry occasionally at her current salon. (*Id.* at 190, 192, PageID.2344.)

Thus, Plaintiffs obtained tangible and intangible educational value.

### B.    Plaintiffs received academic credit for all their clinic time.

Plaintiffs admit that they received educational credit for all tasks performed at Douglas J, including time spent cleaning, restocking and folding laundry. (Poxson Dep. 179, PageID.2424; Eberline Dep. 113, PageID.2325.) Plaintiffs acknowledge that all time purportedly spent doing these tasks was "credited as time on the clinic floor." (Poxson Dep. 179, PageID.2424.) Poxson admits that she received credit for all of the hours she spent at Douglas J. (Poxson Dep. 92-93, 179, PageID.2402-03, 2424.) Eberline emphasized that "if I was physically clocked in I was getting credit." (Eberline Dep. 113, PageID.2325.) Had Plaintiffs not received the academic credit, they would not have completed the state-mandated 1500-hour curriculum, would not have graduated, would not have sat for the state-licensing examination, and would not have become licensed cosmetologists. Mich. Comp. Laws § 339.1207. Indeed,

24

Plaintiffs would not currently be licensed cosmetologist and would not be able to provide cosmetology services to customers, and yet, two of them are. (Eberline Dep. 20-21, PageID.2301-02; Zimmerman Dep. 9, PageID.2463.)

Plaintiffs have sought to multiply the purported benefits to Douglas J by claiming that they spent between 10% and 32% of their clinic time cleaning, restocking, and doing laundry. Their *own* MPAs contradict this claim, and instead show that the Plaintiffs used their clinic time to perform various services and engage in appropriate hours of sanitization activities to ensure public health and safety, consistent with the state licensing requirements. (Exs. 4-6, Pls.' Final MPAs.) To counter their own contemporaneous records, Plaintiffs now say that they lied on their MPAs, contrary to Douglas J policy. This claim is one that puts Plaintiffs' credibility at issue, but even if they did falsify their MPAs, they received credit for the time that they recorded. (Poxson Dep. 179, PageID.2424; Eberline Dep. 113, PageID.2325; Exs. 4-6, Pls.' Final MPAs.)[3] Moreover, Plaintiffs' contradiction of their contemporaneously signed MPAs that they submitted to Douglas J during their education and submitted to the state to sit for the state licensing examination, do not save Plaintiffs' claims. A party's self-serving testimony that "contradict[s] [her] own contemporaneous [records]" amounts only to a "scintilla of proof," which is

_____

[3] On the other hand, if Plaintiffs had been lying on their MPAs, it means that they knowingly sat for the state cosmetology examination without having garnered the 1,500 hours necessary.

insufficient to defeat summary judgment. *Bill Call Ford, Inc. v. Ford Motor Co.*, 830 F. Supp. 1045, 1050 (N.D. Ohio 1993). And this rule applies equally even where, as here, Plaintiffs blame their superiors for the contradiction between their contemporaneous timesheets and their subsequent testimony. *See White v. Washington Gas*, 2005 WL 544733, at *2, *5 (D. Md. Mar. 4, 2005) (rejecting plaintiff's testimony that contradicted timesheets, despite his claim that sheets were inaccurate "because he was instructed that he would be paid only for approved overtime").

### C.   Plaintiffs' activities were voluntary.

Emphasizing that students deserve to "be empowered and engaged to participate in learning activities (theoretical and practical) while receiving hours toward their graduation requirements," instructors are to "[a]lways keep the students engaged and learning something." (Clinic Mgmt. Procedure, PageID.2652.) A list of activities was provided to instructors, which included practical work, styling practice, mannequin competitions, marketing, and general salon aesthetics. (*Id.*) Students select their downtime activities. (Weaver Dep. 209-11, PageID.2572-73.)

Plaintiffs admit this and recognize that, when not servicing a guest, they had several options to use that time to complete their state-mandated 1,500 hours. (Eberline Dep. 69-71, PageID.2314; Poxson Dep. 154-55, PageID.2418; Zimmerman Dep. 85-86, PageID.2482.) Among those options were practicing skills

26

on mannequins, practicing on fellow classmates, cleaning tasks, or working on book-work. (*Id.*) Plaintiffs confirmed that students "regularly" opted to work on fellow classmates and practice the various skills they were learning, including coloring, waxing, and cutting. (Eberline Dep. 69-71, PageID.2314; Zimmerman Dep. 85-86, PageID.2482.) Eberline even recognized that the options available to her during her time in the student clinic—working on the public, classmates, or mannequins—taught her "somewhat more" about how to perform them and do so efficiently. (*Id.*)

Even Plaintiffs admit that, if they performed these alleged cleaning activities, they *chose* to do so. Zimmerman confirmed that she was not required to undertake cleaning tasks as part of the Douglas J program. (Zimmerman Dep. 127-28, PageID.2492.) The same was true for Poxson, who admits she was not required to do laundry because others were hired to do it. (Poxson Dep. 97-98, PageID.2404.)

Eberline and Poxson were placed on academic probation for poor attendance. (Eberline Dep. 122, PageID.2327; Poxson Dep. 102, PageID.2405.) To make up the time they had missed, they volunteered to come into the clinic outside of their normal classes to catch up on applications and hours. (Exhibit 7, July 2012 Eberline Letter Bates Nos. DJ000031-33; Poxson Dep. 89, 92, PageID.2402.) Eberline specifically wanted to stay after clinic hours "to help clean for however long [she was] permitted." (Ex. 7.) And Poxson also admitted that if she came into the clinic to

make up hours, she could work 1 hour, 4 hours, or 7 hours—she had flexibility to leave if there were no guests. (Poxson Dep. 109-10, PageID.2407.)

Plaintiffs' testimony demonstrates that the tasks for which they are now seeking compensation were undertaken voluntarily. In fact, any suggestion that Plaintiffs were mandated to clean for hours is both physically, and logically, impossible. For example, Poxson testified that at times there would be 80 people on the clinic floor. (Poxson Dep. 156, PageID.2418.) She then alleges that students spend two or three hours a day cleaning on slow days, and that Mondays through Wednesdays were typically slow. (*Id*. at 168, PageID.2421.) If this were true, each student clinic would be cleaned for 160 to 240 hours per week. This is simply not credible. And students would not have time to do such cleaning, while seeing multiple guests a day. The Court should therefore disregard Plaintiffs' farfetched testimony. *Galey v. May Dep't Stores Co.*, 9 F. App'x 295, 298 (6th Cir. 2001) ("The summary judgment paradigm requires a court to draw and respect only reasonable inferences; a court need not regard that which is farfetched or fantastic.").

To the extent that Plaintiffs cleaned, folded towels, and stocked shelves, they did so voluntarily. So this factor also weighs against Plaintiffs.

### D. Plaintiffs did not displace Douglas J's employees, who are hired to clean, do laundry, and restock shelves.

There is no evidence that Plaintiffs displaced paid employees, much less that they did so to Douglas J's competitive benefit in the commercial marketplace. It is

undisputed that Douglas J hired employees to perform the complained of activities of cleaning, restocking, and laundry. Plaintiffs admit and acknowledge that Douglas J maintained a staff of paid employees who were responsible for running the clinic, operating the front desk and performing cleaning services through its aesthetics department. (Weaver Dep. 66-68, 82-83, 184-88, PageID.2162, 2166, 2566-67; Guest Servs. Manual, PageID.2738-41; Poxson Dep. 97-98, PageID.2404; Zimmerman Dep. 42, 96-97, PageID.2471, 2485.) In addition, Douglas J contracted with an outside company to perform janitorial and cleaning services six days a week. (Weaver Dep. 111, 182-83, 197-98, PageID.2173, 2565-66, 2569; Daenzer Cleaning Contracts, PageID.2755-59 (obligating Daenzer to keep the school facilities clean in exchange for a set weekly fee, regardless of student enrollment); *see also* Daenzer Cleaning Checklist, PageID.2762.) Employees were not displaced by services that a student might provide in connection with their academic training in the student clinics. Indeed, the school had employees that would complete the laundry. (Poxson Dep. 97-98, PageID.2404.) The students might "help," as would instructors. (*Id.*)

Importantly, there is no evidence that the number of people Douglas J employed changed based on the number of students Douglas J had in any given semester. The square footage of the buildings in which the students learned remained constant, and the areas that needed to be cleaned did too. If students were being used to displace Douglas J employees who provided aesthetics and janitorial services,

then the expenses of these positions would logically have fluctuated inversely to the number of students. But they did not. (*See e.g.*, Daenzer Cleaning Contracts, PageID.2755-59; Daenzer Cleaning Checklist, PageID.2762.)

Earlier, Plaintiffs relied solely on a statement by Scott Weaver to allege that paid employees were displaced by students' voluntary conduct. (Pls.' Summ J. Mot. 28, PageID.2077.) Weaver testified that if students helped guest services that there would, logically, be less "work" for the guest service employee. (Weaver Dep. 214, PageID.2573.) But Weaver did not testify that students' assistance in their free time displaced any paid employee, much less that Plaintiffs' purported work did so.

No Douglas J students, including Plaintiffs, displaced paid employees to the school's competitive benefit in the commercial marketplace. Thus, this factor, again, weighs in favor of the conclusion that Douglas J was not the primary beneficiary of the Plaintiffs performing these tasks.

***

Application of the *Eberline* factors to the facts of this case shows that Plaintiffs obtained benefits from their activities whereas any benefit to Douglas J was insubstantial at best. Thus, Plaintiffs were the primary beneficiaries of all the tasks challenged, and Douglas J is entitled to summary judgment.

**IV.   Plaintiffs' time spent on these tasks was de minimis and impracticable to record.**

Even if this Court determined that the work at issue was not for Plaintiffs' primary benefit, the time is still not compensable. Before concluding that any portion of work is compensable, this Court "should determine whether the work at issue is for de minimis amounts of time or is practically speaking too difficult to record." *Eberline*, 982 F.3d at 1018-19.

When analyzing whether tasks are de minimis or impractical to record, each individual task for which compensation is being sought should be considered independently. *Lindow v. United States*, 738 F.2d 1057, 1064 (9th Cir. 1984) (analyzing multiple pre-shift activities separately); *Chambers v. Sears Roebuck & Co.*, 428 F. App'x 400, 415 (5th Cir. 2011) (analyzing myriad activities separately and finding them de minimis, even though in aggregate they took 30 minutes).

Here, Plaintiffs claim they undertook a litany of different tasks. But Plaintiffs have presented no evidence of the amount of time they spent on any one of these tasks and have provided nothing more than mere speculation as to the aggregate time they spent doing *all* of the tasks. (Pls.' Summ J. Mot., PageID.2061-63.) This contention inappropriately lumps several tasks into one, contrary to the analysis courts undertake. Plaintiffs have not presented any evidence of the time they actually worked the tasks for which they now seek compensation.

On the contrary, the only record evidence is the Plaintiffs' MPAs, which they completed at the time of their education, and documented their time spent on each identified task. Of the required 1,500 total hours in Douglas J's educational program, Plaintiffs MPAs show nominally more sanitation hours than the 40 hours required by the state. (Exs. 4-6, Pls.' Final MPAs.) Yet despite these—their own contemporaneous records of their actions—Plaintiffs allege significantly more time, without any evidentiary support. No one can hunt through the monthly MPAs and track the time, if any, spent on these tasks. Such random tasks are exactly the kind of short one-off tasks that courts have found to be de minimis. *See, e.g.*, *Lindow*, 738 F.2d at 1064; *Chambers*, 428 F. App'x at 415.

## CONCLUSION

For all of the foregoing reasons, the Court should grant summary judgment in favor of Defendants.

Dated: July 23, 2021

Respectfully submitted,
WARNER NORCROSS + JUDD LLP

*s/ Matthew T. Nelson*

Michael G. Brady
Adam T. Ratliff
2715 Woodward Avenue, Suite 300
Detroit, Michigan 48201
313.546.6000
mbrady@wnj.com
aratliff@wnj.com

Matthew T. Nelson
Amanda M. Fielder
Brandon J. Cory
150 Ottawa Avenue NW, Suite 1500
Grand Rapids, Michigan 49503
616.752.2000
mnelson@wnj.com
afielder @wnj.com
bcory@wnj.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2021 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all parties of record. There are no on-ECF participants to be served.

Dated:  July 23, 2021        *s/  Matthew T. Nelson*
                                        Matthew T. Nelson